IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 24, 2002 Session

## STATE OF TENNESSEE v. JAMES ALLEN BAILEY

**Direct Appeal from the Circuit Court for Cocke County**
**Nos. 8394-8399     Ben W. Hooper, II, Judge**

_____

**No. E2001-02443-CCA-R3-CD**
**August 28, 2002**
_____

The defendant pled guilty to six counts of arson, Class C felonies, and one count of setting fire to personal property, a Class E felony. The trial court ordered an effective sentence of fifteen years incarceration followed by five years of probation. On appeal, the defendant argues: (1) the trial court erred in conducting an independent investigation into pyromania; (2) the length of his individual sentences is excessive; (3) the trial court erred in imposing consecutive sentencing; and (4) the trial court improperly denied alternative sentencing. We modify the defendant's sentences to an effective term of ten years in the Department of Correction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part;**
**Reversed in Part; Sentences Modified**

JOE G. RILEY, J., delivered the opinion of the court, in which JERRY L. SMITH, J., joined. DAVID H. WELLES, J., filed a dissenting opinion.

Edward C. Miller, District Public Defender (at hearing); and Susanne Bales, Assistant District Public Defendant (on appeal), for the appellant, James Allen Bailey.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and Ronald C. Newcomb, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant admitted setting a series of fires near his home in Parrottsville, Tennessee. He burned uninhabited mobile homes, a garage, and a truck, which property belonged to various neighbors and family friends. The defendant testified at sentencing he set the fires because he was "aggravated" with his elderly grandfather. He stated he knew the buildings were unoccupied. He

indicated he felt better "for a little while" after setting a fire, but would later regret his actions. He said that after he set each fire, he would leave the scene and return after the fire department arrived.

At sentencing, two victims testified the fires had made them fearful, and they did not wish for the defendant to be released on probation. Doris Ball, the defendant's aunt, testified the defendant received SSI payments due to his mental limitations. Ball also stated the defendant required repeated instructions to perform tasks.

The trial court applied enhancement factors seven (offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement) and ten (the defendant had no hesitation about committing a crime when the risk to human life was high). Tenn. Code Ann. § 40-35-114(7), (10). It also found mitigating factor eight (defendant was suffering from a mental or physical condition that significantly reduced his culpability) could also apply. Tenn. Code Ann. § 40-35-113(8). In regard to alternative sentencing, the trial court stated the following:

> One of the factors to be considered in probation is whether or not he might reasonably be expected to be successfully rehabilitated, and as I stated this morning, I have done quite a bit of research on people that may be classified as pyromaniacs.
> . . . .
>
> There is virtually no cure, no treatment, and that is somewhat sad when you have just admitted that he probably suffers from a mental condition. Some mental conditions can be treated but apparently success has been very limited in this area.

The trial court also found alternative sentencing to be inappropriate because of the need to protect the public from the defendant's possible future conduct and to avoid depreciating the seriousness of the offenses. The trial court then sentenced the defendant to five years for each arson conviction and one year for the conviction for setting fire to personal property.

Although it is not entirely clear, it appears the trial court in determining consecutive sentencing concluded that, despite the lack of psychiatric proof, the defendant was a "dangerous mentally abnormal person." *See* Tenn. Code Ann. § 40-35-115(b)(3). It also found the defendant was a dangerous person who had little or no regard for human life; the public needed to be protected; and the defendant's record showed extensive criminal activity. *See* Tenn. Code Ann. § 40-35-115(b)(2), (4). It ordered four of the five-year sentences to be served consecutively with the remaining sentences to be served concurrently for an effective 20-year sentence. However, it ordered the defendant to spend the first fifteen years in incarceration with the remaining five years on probation.

We conclude the trial court made three errors in sentencing the defendant: (1) it considered its own independent research on pyromania; (2) it improperly applied an enhancement factor; and

(3) it improperly applied two consecutive sentencing factors. We, therefore, review the sentences *de novo* without a presumption of correctness.

## I. TRIAL COURT'S INDEPENDENT RESEARCH

The defendant first argues the trial court erred in conducting independent research of pyromania. We must agree.

A court must restrain itself to consider only those facts presented to it by the parties; it may not make an independent investigation off the record and base its holding on the resulting information. State v. Hart, 911 S.W.2d 371, 376 (Tenn. Crim. App. 1995); Jessie C. Minor v. State of Tennessee, No. M2001-00545-CCA-R10-PC, 2001 Tenn. Crim. App. LEXIS 932, at *34-35 (Tenn. Crim. App. Dec. 5, 2001, at Nashville). In this case, the trial court stated it conducted research on pyromania. Based on this research, the trial court essentially concluded the defendant was a pyromaniac whose condition was untreatable. Further, it is apparent from the record that the trial court relied heavily on its research in sentencing the defendant. We also note the trial court's statements regarding pyromania did not contain the kind of information subject to judicial notice. *See* Tenn. R. Evid. 201(b).

The state correctly argues this court's review of the lower court's sentencing decision is *de novo* with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). However, for this presumption to apply to the trial court's actions, there must be an affirmative showing in the record that the trial court considered proper sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999). If the trial court does not comply with statutory sentencing provisions, our review of the sentence is *de novo* with no presumption the trial court's determinations are correct. State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000).

Because of the trial court's independent investigation and consideration of information outside of the record, the trial court's sentence is not entitled to a presumption of correctness.

## II. THE LENGTH OF THE DEFENDANT'S SENTENCES

The defendant also contends the length of his sentences for the offenses is excessive because the trial court erred in applying enhancement factors seven and ten. *See* Tenn. Code Ann. § 40-35-114(7), (10).

As a Range I standard offender, the defendant faced three to six years for each arson conviction and one to two years for the conviction for setting fire to personal property. *See* Tenn. Code Ann. § 40-35-112(a)(3), (5). The trial court applied enhancement factors seven (offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement)

and ten (the defendant had no hesitation about committing a crime when the risk to human life was high), and mitigating factor eight (defendant was suffering from a mental or physical condition that significantly reduced his culpability). *See* Tenn. Code Ann. §§ 40-35-114(7), (10); -113(8). It sentenced the defendant to five years for each arson conviction and the minimum one-year sentence for setting fire to personal property.

Based on our review of the record, we conclude enhancement factor seven applies. *See* Tenn. Code Ann. § 40-35-114(7). At sentencing, the defendant's testimony indicated he relieved his frustrations by committing the offenses and would return to the scene to watch the fires. We reasonably infer from the evidence that the defendant committed the offenses to gratify his desire for pleasure or excitement and give this factor great weight.

However, enhancement factor ten is inapplicable under the facts and circumstances of this case. *See* Tenn. Code Ann. § 40-35-114(10). We must look to the specific facts and circumstances in an arson case on a case-by-case basis in order to determine whether this factor applies. State v. Lewis, 44 S.W.3d 501, 506 (Tenn. 2001). The proof showed the defendant targeted unoccupied buildings. Further, there was no proof any of the firefighters who responded to the fires were required to enter the burning structures or were otherwise placed in danger, other than that normally associated in extinguishing a fire, as a result of the defendant's actions. This case is distinguishable from Lewis where firefighters actually entered and searched a "fully involved" flaming building. *Id*. at 506-07. Therefore, we are unable to conclude the defendant had no hesitation about committing a crime when the risk to human life was high. *See* Tenn. Code Ann. § 40-35-114(10).

In summary, enhancement factor seven (offense committed for pleasure or excitement) applies and is entitled to great weight. *See* Tenn. Code Ann. § 40-35-114(7). The trial court's application of mitigating factor eight (mental condition reducing culpability) is not challenged. *See* Tenn. Code Ann. § 40-35-113(8). However, we give it very little weight. We conclude sentences of five years for each arson and one year for setting fire to personal property are appropriate. We recognize this is the same length of the sentences determined by the trial court; however, we reach the same result in our *de novo* review without the presumption of correctness.[1]

## III. CONSECUTIVE SENTENCING

The defendant maintains the trial court erred in ordering consecutive sentencing. We modify the consecutive sentencing order of the trial court.

---

[1] On appeal, the state requests that we apply enhancement factor six (the amount of damages to property sustained by the victim was particularly great). *See* Tenn. Code Ann. § 40-35-114(6). At the sentencing hearing, the trial court did not apply this factor. Although this court has the authority to consider an enhancement factor not found by the trial court, we are reluctant to do so in this case based upon the limited record before us concerning the amount of damages suffered by the victims.

Generally, it is within the discretion of the trial court to impose consecutive sentences if it finds by a preponderance of the evidence that at least one of following statutory criteria apply:

> ...
>
> > (2) [t]he defendant is an offender whose record of criminal activity is extensive;
> >
> > (3) [t]he defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences; [or]
> >
> > (4) [t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
>
> ...

Tenn. Code Ann. § 40-35-115(b).

The trial court found the defendant was both a "dangerous mentally abnormal person"[2] and a "dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *See* Tenn. Code Ann. § 40-35-115(b)(3), (4). It also found the defendant's record of criminal activity was extensive. *Id.* at (b)(2). It ordered four of defendant's five-year sentences to be served consecutively.

First, the consecutive sentencing statute mandates that before a defendant may be found to be "a dangerously mentally abnormal person," a competent psychiatrist must conclude that "the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to the consequences." Tenn. Code Ann. § 40-35-115(b)(3). There was no such psychiatric proof or documentation in this case.

Further, as we previously discussed, there is nothing in the record to establish that the defendant's behavior exhibited "little or no regard for human life, and a lack of hesitation about committing a crime in which the risk to human life is high." *See* Tenn. Code Ann. § 40-35-115(b)(4). The consecutive sentencing statute requires such evidence before the defendant can be

---

[2]As stated previously, it is not entirely clear whether the trial court actually applied this factor. However, based upon our reading of the transcript, it appears to us that it did.

declared a "dangerous offender." *Id.* Therefore, the "dangerous offender" criterion for consecutive sentences does not apply.

However, we conclude the proof supports the trial court's finding that the defendant had an extensive record of criminal activity. While the defendant's prior criminal history is sparse, the record shows he committed the instant seven felony offenses during separate incidents over a period of eleven months. A court is not limited to considering a defendant's prior criminal history in determining whether he has an extensive record of criminal activity; it may also consider the offenses for which he is being sentenced. *See* State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992); State v. Timothy Jason Solomon, E1999-00991-CCA-R3-CD, 2000 Tenn. Crim. App. LEXIS 63, at *4 (Tenn. Crim. App. Jan. 27, 2000, at Knoxville), *perm. to app. denied* (Tenn. 2000). The prior criminal record of an offender may have been good, but "the crimes for which he is being sentenced may indicate criminal activity so extensive and continuing for such a period of time as to warrant consecutive sentencing." Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976); *see* Tenn. Code Ann. § 40-35-115 Sentencing Commission Comments (explaining that the consecutive sentencing statute essentially codified this Gray criterion).

We find only one of the consecutive sentencing criteria applies under the facts and circumstances of this case. Thus, we decide the issue of consecutive sentencing *de novo* without a presumption of correctness. We conclude a total effective sentence of ten years is "justly deserved in relation to the seriousness of the offense[s]" and "[is] no greater than that deserved for the offense[s] committed." *See* State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002) (citing Tenn. Code Ann. §§ 40-35-102(1); -103(2)). Thus, the first two five-year arson sentences shall run consecutively to each other; all other sentences will run concurrently with each other and the first two arson sentences.

## IV. ALTERNATIVE SENTENCING

The defendant argues that since he is presumed to be a favorable candidate for alternative sentencing, the trial court erred in not allowing him to serve all of his sentences on probation. We disagree.

A defendant is eligible for probation if the sentence is eight years or less, subject to some statutory exclusions. Tenn. Code Ann. § 40-35-303(a). A defendant with a total effective sentence in excess of eight years is eligible for probation if the individual sentences imposed for the convictions fall within the probation eligibility requirements. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997).

An especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). A trial court must presume that a defendant sentenced to eight years or less and for whom incarceration is not a priority is subject to alternative sentencing. State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993). It is further presumed that a sentence other than incarceration would result in successful rehabilitation unless rebutted by sufficient evidence in the record. *Id.* at 380.

In determining whether to grant or deny probation, a trial court should consider the circumstances of the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Boyd, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

The trial court denied alternative sentencing, in part, because of the need to avoid depreciating the seriousness of the offenses and to protect the public. The proof at trial established that the defendant set fire to five separate structures and a vehicle over a period of eleven months, and that he set fire to one structure twice. The proof further established the defendant's actions caused his victims emotional distress and property loss. We conclude that alternative sentencing is inconsistent with the seriousness of these offenses and is not in the best interest of the public nor the defendant.

## CONCLUSION

After conducting a *de novo* review of the defendant's sentences with no presumption of correctness, we decline to modify the length of any of the defendant's individual sentences as determined by the trial court; however, we modify the judgments of the trial court so that the defendant will serve his five-year sentences for case numbers 8394 and 8395 consecutively to each other, and case numbers 8396, 8397, 8398, and 8399 will run concurrently with each other and with case numbers 8394 and 8395 for an effective sentence of ten years. No term of probation will follow.

_____
JOE G. RILEY, JUDGE