IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 22, 2010

STATE OF TENNESSEE v. JENNIFER LEEANN NOWLIN

Direct Appeal from the Circuit Court for Bedford County
No. 16824     Lee Russell, Judge

No. M2009-02261-CCA-R3-CD - Filed July 26, 2010

The defendant, Jennifer LeeAnn Nowlin, pled guilty to aggravated burglary, a Class C felony, and conspiracy to commit aggravated burglary, a Class D felony. The trial court sentenced her as a Range II multiple offender to eight years for aggravated burglary concurrent with six years for the conspiracy charge, to be served in the Tennessee Department of Correction. On appeal, the defendant argues that her sentence is excessive. Following our review, we affirm the judgments of the trial court.

Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

J.C. MCLIN, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Donna Orr Hargrove, District Public Defender, Michael J. Collins (on appeal and at trial) and Catherine H. Hickerson (at trial), Assistant District Public Defenders, Shelbyville, Tennessee, for the appellant, Jennifer LeeAnn Nowlin.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

OPINION

Background

The defendant, Jennifer LeeAnn Nowlin, pled guilty on July 2, 2009, to aggravated burglary, a Class C felony, and conspiracy to commit aggravated burglary, a Class D felony.

The state submitted that it would have proven the following facts had the matter proceeded to trial.

[O]n January 12[], 2008, at a little after midnight, the 911 comm[unication] center received a call of a home invasion at 121 . . . Chockley Street, . . . here in Shelbyville. The police department responded. They encountered a number of Hispanics [who] indicated that two white males had entered the residence, one brandishing . . . a stick and demanding money.

A large number of other Hispanics . . . started responding [en masse] before the police department. [T]he two white males then jumped in a car and sped away. There were two white females in the car at the time.

The police department . . . began the investigation. They actually got information that the car involved was at a Chevron in town. They followed it and ultimately made contact with the defendant, who admitted to being involved in the incident.

They learned [that] the identit[ies] of the two white males [were] Charles Tucker and Michael Vaughn. Through interviewing [them], they also learned that the other female was an individual named Brandy Reed.

[S]ome or all of these folks had talked about going over to the residence[.] [T]he plan was that the defendant was supposed to distract them, and then the other two were supposed to come in, in an apparent home invasion, and demand money. [T]his, at its genesis[,] had that someone in this group of individuals felt like they were owed some money or it had something to do with some money. Several of the individuals [who] gave statements made reference to it being about business.

The defendant . . . [gave] a statement[] that she was with Mr. Vaughn and Mr. Tucker[.] [T]hey were riding around when she got a call from her friend[,] Sebastian[,] for business. And so they went over to the house. Now, her take was that she went over there for business, but instead they apparently decided to escalate it into . . . a home invasion and attempted robbery.

Mr. Vaughn and Mr. Tucker had [the defendant] more involved in the aspect of the home invasion and the taking of money than she puts herself.

At the sentencing hearing, the state submitted the defendant's presence report as evidence. The defendant offered an allocution, apologizing for her actions. The trial court sentenced the defendant as a Range II multiple offender based on a 2001 felony theft conviction and an out-of-state 1999 felony possession of cocaine conviction. The court found two enhancement factors: (1) the defendant had prior criminal convictions other than those necessary to establish the range; and (2) the defendant failed to comply with terms of a sentence involving release into the public. The court determined that no mitigating factors applied. The court set the defendant's sentence at eight years for the aggravated burglary conviction and six years for the conspiracy to commit aggravated burglary conviction. In deciding the alignment of the sentences, the court stated that no factor justifying consecutive sentences overcame the presumption favoring concurrent sentences; therefore, the court ordered the defendant's sentences to run concurrently. The court denied alternative sentencing, finding that the defendant's criminal record indicated "little potential for rehabilitation and a high risk of recidivism unless she [was] given time to serve in jail . . . ."

**Analysis**

On appeal, the defendant argues that her sentence is excessive. Specifically, she contends that "[a] six[-]year sentence would still achieve the purposes of the Sentencing Reform Act while at the same time conserving Department of Correction[] resources."

When an accused challenges the length and manner of service of a sentence, this court conducts a *de novo* review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401. This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with our sentencing statutes, and (2) the trial court's findings are adequately supported by the record. *See State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001); *see also* Tenn. Code Ann. § 40-35-210(f).

Prior to 2005, the Sentencing Act set forth a "presumptive sentence" to be imposed within the applicable range: the minimum sentence for all felonies other than Class A felonies, and the midpoint sentence for Class A felonies. *Id.* § 40-35-210(c) (2003). Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. *See* Tenn. Code Ann. §§ 40-35-114, -35-210(c). The trial court is free to select any sentence within the

applicable range if the length of the sentence complies with the purposes and principles of the Sentencing Act. Tenn. Code Ann. § 40-35-210; *see also State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008) (noting that such principles encompass themes of punishment fitting the crime, deterrence, and rehabilitation). The 2005 amendments set forth certain advisory sentencing guidelines which the trial court is required to consider but is not bound by. *See* Tenn. Code Ann. § 40-35-210(c). Although the application of factors is advisory, a court shall consider evidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114. *Id.* § 40-35-210(b)(5). The trial court is also required to place on the record what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing. *Id.* § 40-35-210(d). Once applied, the chosen enhancement factor becomes a sentencing consideration subject to review under Tennessee Code Annotated section 40-35-401(c)(2). Thus, while the court can weigh enhancement factors as it chooses, the court may only apply the factors if they are "appropriate for the offense" and "not already an essential element of the offense." *Id.* § 40-35-114. The trial court must find facts related to sentencing by a preponderance of the evidence rather than beyond a reasonable doubt. *State v. Winfield*, 23 S.W.3d 279, 283 (Tenn. 2000).

Aggravated burglary is a Class C felony. Tenn. Code Ann. § 39-14-403(b). As a Range II multiple offender, the defendant was subject to a sentence of six to ten years. *See* Tenn. Code Ann. § 40-35-112(b)(3). Conspiracy to commit aggravated burglary is a Class D felony. *See* Tenn. Code Ann. § 39-12-107(c). For a Class D felony, the defendant was subject to a sentence of four to eight years. Tenn. Code Ann. § 40-35-112(b)(4).

The defendant relies on *State v. Ashby* for the assertion that the trial court should have considered scarce prison resources when setting the defendant's sentence. In that case, the supreme court, referring to the Tennessee Code Annotated section 40-35-102(5), stated that "[t]he imposition of sentences must accede to the reality that the state does not have available sufficient prison facilities to accommodate all persons who, according to traditional concepts of punishment, would be incarcerated." *Ashby*, 823 S.W.2d at 168. Tennessee Code Annotated section 40-35-102(5) states:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

In response to prison overcrowding, the legislature created a presumption in favor of alternative sentencing for especially mitigated and standard offenders and enacted the

Community Corrections Act of 1985. *Ashby*, 823 S.W.2d at 168-69. The Tennessee sentencing statutes, therefore, incorporate concerns about scarce prison resources by providing alternatives to incarceration for certain defendants.

In this case, the trial court determined that the defendant was not a candidate for alternative sentencing, which, as discussed above, is the legislative solution to scarce prison resources. When the trial court follows the statutory sentencing procedure and gives due consideration to the factors and principles relevant to sentencing, this court may not disturb the sentence. *See Carter*, 254 S.W.3d at 344-45. The trial court is free to select any sentence within the applicable range if the length of the sentence complies with the purposes and principles of the Sentencing Act. Tenn. Code Ann. § 40-35-210. The record does not preponderate against the trial court's findings. Furthermore, the record indicates that the trial court considered the sentencing principles and all relevant facts and circumstances. Therefore, the trial court's determinations are entitled to a presumption of correctness. Accordingly, we conclude that the defendant's mid-range sentence was appropriate, and she is not entitled to relief.

## Conclusion

Based on the foregoing reasons, we affirm the judgments of the trial court.

_____
J.C. McLIN, JUDGE