IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 17, 2024

**STATE OF TENNESSEE v. DERRICK LEE JOHNSON**

**Appeal from the Circuit Court for Rutherford County**
**No. 89199     Barry R. Tidwell, Judge**
———————————————————

**No. M2023-01662-CCA-R3-CD**
———————————————————

Derrick Lee Johnson, Defendant, appeals from the Rutherford County Circuit Court's judgment revoking his probation and ordering him to serve the balance of his probationary sentence of eight years in confinement. On appeal, Defendant argues the trial court abused its discretion by improperly considering Defendant's indicted charges instead of the ones for which he was ultimately convicted, and by failing to consider whether alternative sentencing would serve the ends of justice. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and JOHN W. CAMPBELL, SR., JJ., joined.

Gerald L. Melton, District Public Defender, Brennan M. Foy, Assistant Public Defender, for the appellant, Derrick Lee Johnson.

Jonathan Skrmetti, Attorney General and Reporter; William C. Lundy, Assistant Attorney General; Jennings H. Jones, District Attorney General; and John Zimmermann, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Procedural History

A Rutherford County Grand Jury indicted Defendant on charges of possession of over .5 grams of methamphetamine with the intent to sell in a drug-free zone, a Class A felony, and possession of drug paraphernalia, a Class A misdemeanor. Pursuant to a plea agreement with the State, Defendant pleaded guilty to the reduced charge of attempted

possession of over .5 grams of methamphetamine with the intent to sell in a drug-free zone, a Class C felony, and as charged to possession of drug paraphernalia. On May 23, 2023, the trial court sentenced Defendant pursuant to the agreement as a Range II offender to eight years which it suspended to supervised probation. On that same date, Defendant signed a form acknowledging the conditions of his probation. The conditions included Defendant would "[a]bide by all rules and conditions of probation as set by [his] probation officer," and "[r]eport at a minimum of once per month, in person, unless additional reporting [was] required by [his] probation officer." The form was also signed by the trial court, Defendant's attorney, and the prosecutor.

On August 10, 2023, the trial court issued a warrant for Defendant for violating the terms and conditions of his probation. The warrant alleged that Defendant failed to inform his probation officer that he changed residences, which prevented the officer from visiting his home or employment because he never reported. It also alleged that Defendant committed a "Zero-Tolerance" violation as an "Absconder."

On November 15, 2023, the trial court held a probation revocation hearing. Rhonda Garrison, Defendant's fiancée, testified that she and Defendant were homeless. She said that she and Defendant used the Journey Home program,[1] as their "physical mailing address." She said that if Defendant were released from jail, he would continue to be homeless but would rely on Journey Home and another program for housing assistance, potential employment, and obtaining his GED. She testified that she had tried to "line up some jobs" for Defendant: one to build pallets at a warehouse and another at Clarks Metal. Ms. Garrison also stated the Homeless Task Force of the Murfreesboro Police Department knew where she and Defendant camped "location wise."

Defendant testified on his own behalf at the hearing and admitted that he violated the terms of his probation. He claimed that he changed his residence without permission because his mom kicked him out and he could not get "back and forth" to intermittent jobs. Defendant agreed that he knew he was supposed to report but chose "not to walk over to the probation office even one time." When asked why he chose not to report, Defendant said "I tried to provide for me and my [fiancée]." Defendant further acknowledged he had been on probation twice before with reporting requirements and that he did so successfully during those terms. Defendant stated, "I completed all of my probation, yes, sir."

The trial court found that Defendant conceded the violations and that the State had proven them. Specifically, the court found that Defendant changed his address without

---

[1] "The Journey Home is a Christian ministry whose primary focus is to serve the homeless and disadvantaged of Rutherford County—providing practical resources and relationships that encourage faith, housing and economic stability, wholeness, and reintegration into community life." *Who We Are*, THE JOURNEY HOME, https://lovegodservepeople.org/who-we-are/ (last visited July 10, 2024).

informing his probation officer and that he failed to ever report after being released from custody. The court found Defendant's testimony to be "a little bit contradictory," but ultimately found that Defendant never "reported or even went to the probation office." The court also referenced the charges in Defendant's indictment and the ones to which he pleaded guilty:

> I note from the file that originally this was indicted as an A Felony. Ultimately, it was pled to a C Felony, although he is Range II. . . .
>
> But he was given a fairly significant break at the plea where he pled to an attempted manufacture, deliver, sale, or possession of methamphetamine over .5 grams. An eight-year sentence in the middle of the range.
>
> So, it wasn't at the bottom. But he's still Range II, multiple offender.

The court noted that there was no evidence that Defendant sought job training or similar services and discredited Defendant's testimony that he wished to seek out such services, reasoning Defendant "wants to do that because now he's in jail."

Having found Defendant failed to comply with the terms of his probation, the trial court then considered Defendant's potential sentence. The court said:

> The [c]ourt has several options. One is [to] order incarceration for some period of time. For instance, a split confinement. [The court] could cause the sentence to be executed as originally entered, which is an eight-year sentence. [Defendant] can serve 11-29 before [the court] can place him back on probation, modify conditions, and even extend it up to two years.

The court then stated there was not "any reason to believe [Defendant's] going to comply with probation" in the future. The trial court revoked Defendant's probation and placed Defendant's eight-year sentence of confinement into effect and granted him four and a half months of jail credit. This timely appeal follows.

## II. Analysis

Defendant makes two arguments on appeal. First, Defendant argues the trial court improperly considered Defendant's original charges from his indictment instead of the charges to which he pleaded guilty. Second, Defendant argues the trial court abused its discretion by failing to consider alternative sentences. The State asserts that Defendant

- 3 -

waived his first argument by failing to sufficiently cite to authorities in his brief, as required by Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure and Rule 10(b) of the Tennessee Rules of Criminal Procedure. As to Defendant's second argument, the State contends that the trial court did not abuse its discretion.

Generally, probation is available to a defendant whose actual sentence imposed is ten years or less, and his or her underlying offense is not excluded by law. Tenn. Code Ann. § 40-35-303(a). However, no criminal defendant is entitled to a presumption of probation, and no defendant is automatically entitled to probation as a matter of law. *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008); *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant must prove his or her suitability of alternative sentencing options. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-303(b)).

We consider the trial court's determination to revoke probation under an abuse of discretion standard. *See State v. Dagnan*, 641 S.W.3d 751, 758 (Tenn. 2022) (citations omitted) ("Concerning the standard of appellate review, . . . the case law is clear that probation revocation decisions are reviewed for abuse of discretion."). Probation revocation is a two-step consideration in which the trial court makes two distinct determinations. *Id.* at 753. First, the court determines whether to revoke probation; if so, the court must determine the consequences which shall apply upon revocation. *See id.* at 757. "[T]hese are two distinct discretionary decisions, both of which must be reviewed and addressed on appeal." *Id.* at 757-58. "Simply recognizing that sufficient evidence existed to find that a violation occurred does not satisfy this burden." *Id.* at 758.

A trial court may revoke a defendant's probation upon a finding by a preponderance of the evidence that a defendant has violated the conditions of probation. Tenn. Code Ann. §§ 40-35-310(a), -311(e)(1) (Supp. 2021). Addressing the consequences of the violation, this court has explained:

> Upon finding that a defendant has violated probation, the trial court may: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's probationary period not exceeding one year; (4) return the defendant to probation on appropriate modified conditions; or (5) resentence the defendant for remainder of the unexpired term to a sentence of probation. *See* [Tenn. Code Ann.] §§ 40-35-308(c)(1), (2); -310; - 311(e)(1), (2) (2021).

*State v. Brewster*, No. E2021-00793-CCA-R3-CD, 2022 WL 2665951, at *3 (Tenn. Crim. App. July 11, 2022), *no perm. app. filed*.

- 4 -

## A. Consideration of Charges from Indictment

Defendant argues that the trial court improperly considered the charges from Defendant's indictment instead of the charges to which he pleaded guilty. The State argues Defendant waived this argument for failing to cite to any supporting authority in his brief. Alternatively, the State argues the trial court did not abuse its discretion on this issue.

In its waiver argument, the State contends Defendant failed to cite "authority for the proposition that double jeopardy considerations bar a trial court from considering the leniency of a plea agreement when determining the appropriate consequence of a probation revocation." *See* Tenn. R. Ct. Crim. App. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court.").

In his reply brief, Defendant admits that he mentioned the phrase "double jeopardy" in his principal brief and concedes he did not cite authority on that position because it "likely does not exist." Instead, Defendant argues that the trial court's error was "a violation of applicable legal standards related to sentencing." Defendant further admits "there are circumstances where sentencing courts can consider previously acquitted charges against a defendant," *see State v. Winfield*, 23 S.W.3d 279 (Tenn. 2000), but maintains that the facts must be proven "by a preponderance of the evidence." *Id.* at 281. Defendant then conclusively argues: "Here, that was not done, and therefore, consideration of the acquitted charges was an abuse of discretion warranting reversal and remand to the trial court."

We conclude that the record shows that the trial court's brief reference to charges from Defendant's indictment, and the "break" Defendant received in his plea agreement, shows these were not the reasons for the court's sentencing decision; rather, the court based its decision on Defendant's failure to ever report to his probation officer or provide the officer his residence. Accordingly, we need not decide whether this issue was waived or if the trial court committed any error on this issue because any such error was harmless, and Defendant cannot show prejudice. *See* Tenn. R. App. P. 36(b).

## B. Consideration of Alternative Sentencing

Defendant also argues that the trial court abused its discretion by failing to consider whether alternative sentencing would serve the ends of justice. Defendant claims he and his fiancée had been working with "local community organizations focused on homeless outreach to arrange employment and services for Defendant upon his release from jail." Defendant contends that the trial court failed to consider the circumstances of the violation and what punishment would serve the interests of both Defendant and the public. The State

argues the trial court properly considered whether an alternative sentence would serve the ends of justice.

When determining the appropriate punishment for a probation violation, a trial court should consider "whether such an action would serve the ends of justice and be in the best interest of both the public and the defendant." *State v. Mitchell*, 810 S.W.2d 733, 736 (Tenn. Crim. App. 1991). Still, we "will not require 'a trial court [to] include specific phraseology in its ruling.'" *State v. Beasley*, No. M2023-00149-CCA-R3-CD, 2024 WL 252805, at *4 (Tenn. Crim. App. Jan. 24, 2024) (alteration in original) (quoting *State v. Doxtater*, No. E2023-00261-CCA-R3-CD, 2023 WL 8319200, at *6 (Tenn. Crim. App. Dec. 1, 2023)), *no perm. app. filed*.

The record belies Defendant's argument. It establishes that the trial court considered both the best interests of Defendant and the public. The court found that Defendant never complied with the terms of his probation and did not seek out services provided by Journey Home or other programs. It also determined Defendant's testimony not to be credible. Further, the court explicitly considered the different options it had as to Defendant's sentence. The court recognized it could place Defendant back on probation with modified conditions, extend his probation, impose a shorter amount of incarceration, or order Defendant to serve the original sentence. The court stated, "I don't think there's really anything before the [c]ourt that would give me any reason to believe that he's going to comply with probation. He hasn't so far." It chose to order Defendant to serve its full sentence, as was its prerogative.

Based on the record before us, we conclude the trial court did not abuse its discretion in revoking Defendant's probation and that it did properly consider the ends of justice. Defendant is not entitled to relief.

## III. Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgment of the trial court.

_____
MATTHEW J. WILSON, JUDGE

- 6 -